**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

ERIC EWELL,

        *Plaintiff*,

      v.

U.S. DEPARTMENT OF JUSTICE,

        *Defendant*.

Civil Action No. 14-495 (RDM)

---

## <u>MEMORANDUM OPINION AND ORDER</u>

Eric Ewell, who is proceeding *pro se* in this matter, was charged in the Western District of Pennsylvania with conspiracy to distribute and to possess with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(i). While awaiting trial, Ewell filed a request with the United States Department of Justice under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, seeking documents regarding the wiretap the government used to obtain evidence disclosed to Ewell during discovery in his criminal case. When the Justice Department declined to produce any responsive records or to expedite his administrative appeal, Ewell brought this action under FOIA and the Privacy Act.

Before the Court are the government's motion for summary judgment, Dkt. 12, and Ewell's motion for leave to amend his complaint, Dkt. 25. Because the government has demonstrated that it conducted a reasonable search for responsive records and that all responsive records were properly withheld under FOIA and the Privacy Act, the Court grants summary judgment to the Justice Department. Because Ewell's motion for leave to amend his complaint would fundamentally alter the nature and scope of this action, would unduly burden the defendant, and is, at least in significant respects, futile, the Court denies that motion.

# I. BACKGROUND

Eric Ewell was charged in the Western District of Pennsylvania with conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(i).  *See United States v. Ewell*, No. 13-cr-125 (W.D. Pa. Apr. 30, 2013).  In advance of Ewell's detention hearing in June 2013, the government disclosed that it had intercepted and recorded his telephone communications under the authority of a wiretap obtained pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III").  *See* Dkt. 130 at 1, *Ewell*, No. 13-cr-125 (W.D. Pa. June 27, 2013).  In November 2013, Ewell filed a request with the Department of Justice under FOIA and the Privacy Act, seeking "an authentic Department of Justice (DOJ) Office of Enforcement Operation (OEO) copy of the Title III authorization letter(s), memorandums, and any other documents involved in their approval for the electronic surveillance" of several phone numbers that he alleged had been wiretapped.  *See* Dkt. 12-2 at 2 (Cunningham Decl., Ex. A); *see also* Dkt. 12 at 3 (Defs.' Statement of Material Facts ¶ 1).

The Justice Department responded to Ewell's FOIA/Privacy Act request in December 2013.  The Department informed Ewell that "to the extent responsive records do exist, they are exempt from disclosure pursuant to" Exemption 3 of FOIA, which permits agencies to withhold documents "specifically exempted from disclosure by statute."  Dkt. 12-3 at 2 (Cunningham Decl, Ex. B) (citing 5 U.S.C. § 552(b)(3)).  For this reason, the Department explained, it "did not conduct a search for records" and would not produce any records responsive to his request.  *Id.* Ewell appealed the Department's denial of his request and sought expedited treatment, Dkt. 12-4 at 2–5 (Cunningham Decl., Ex. C), but, when the Department's Office of Information Policy ("OIP") denied his request for expedited treatment, *see* Dkt. 12-5 at 2 (Cunningham Decl., Ex.

D), he filed this action.  OIP then informed Ewell that, in light of the pendency of this lawsuit, it was closing his administrative appeal.  Dkt. 12-6 at 2 (Cunningham Decl., Ex. E).

Ewell challenges the adequacy of the Department's search and all of its withholdings. Dkt. 1 at 7 (Compl.).  He also requests that, if the Court remands the matter to the Department, that it "provide for expeditious proceeding in this action." *Id.*  After Ewell brought suit, the Department searched two databases: the Office of Enforcement Operations ("OEO") "database used to track federal prosecutors' requests for permission to apply for court-authorization to surreptitiously intercept conversations of person[s] allegedly involved in criminal activity under Title III," and "archived emails of [Criminal Division] employees that are maintained by its IT department." Dkt. 12-1 at 4 (Cunningham Decl. ¶ 11).  The Department maintains, however, that Ewell is not entitled to any records in response to his request, and it has asserted several additional grounds for nondisclosure that it did not previously assert.

The matter is before the Court on the Department's motion for summary judgment.  *See* Dkt. 12.  The Department argues that it conducted an adequate search for responsive records; that it properly withheld all responsive records under the Privacy Act and FOIA Exemptions 3, 5, 6, and 7(C); and that it properly denied Ewell's request for expedited treatment.  *Id.*  It supports its motion with a declaration by John E. Cunningham III, a trial attorney assigned to the Criminal Division's FOIA and Privacy Act Unit, *see* Dkt. 12-1 (Cunningham Decl.), and a 208-page *Vaughn* index detailing the withheld records and the reasons they were withheld, *see* Dkt. 12-7 (Cunningham Decl., Ex. H); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  Ewell has also moved for leave to file an amended complaint.  *See* Dkt. 25.  Ewell's amended complaint would include new claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); the Federal Tort Claims Act, 28 U.S.C. § 1346; the remedial provisions of Title III, 18 U.S.C. §

2520; and 42 U.S.C. § 1985(3).  *Id.* at 2.  The proposed amended complaint would also add new

defendants, including the Drug Enforcement Administration ("DEA") and several of its agents,

as well as various members of the U.S. Attorney's Office for the Western District of

Pennsylvania.  *Id.* at 3.  Both motions are opposed.  *See* Dkts. 16, 27.

## II.  LEGAL FRAMEWORK

The Freedom of Information Act is premised on the notion that an informed citizenry is

"vital to the functioning of a democratic society, needed to check against corruption and to hold

the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214,

242 (1978).  The Act embodies a "general philosophy of full agency disclosure."  *U.S. Dep't of*

*Defense v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352,

360–61 (1976)).  It thus mandates that an agency disclose records on request, unless they fall

within one of nine exemptions.  "These exemptions are 'explicitly made exclusive' and must be

'narrowly construed.'"  *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (quoting *EPA v.*

*Mink*, 410 U.S. 73, 79 (1973), and *FBI v. Abramson*, 456 U.S. 615, 630 (1982)).  As explained

further below, the present dispute turns on the meaning and application of Exemptions 3 and 5.

Exemption 3 protects records that are "specifically exempted from disclosure by statute."  5

U.S.C. § 552(b)(3).  And Exemption 5 protects "inter-agency or intra-agency memorandums or

letters which would not be available by law to a party other than an agency in litigation with the

agency."  *Id.* § 552(b)(5).  It exempts "those documents, and only those documents, normally

privileged in the civil discovery context."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149

(1975).

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use

and dissemination of personal information contained in agency records . . . by allowing an

individual to participate in ensuring that his records are accurate and properly used, and by imposing responsibilities on federal agencies to maintain their records accurately." *Mobley v. CIA*, 806 F.3d 568, 585 (D.C. Cir. 2015) (quoting *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984)).  Under the Privacy Act, any agency that maintains a "system of records" must provide information about a person to that person upon request.  5 U.S.C. § 552a(d)(1).  But an agency may promulgate regulations "to exempt any system of records within the agency" from such a request, provided that the system meets certain criteria.  *Id.* § 552a(j).  This is because "[t]he Privacy Act—unlike [FOIA]—does not have disclosure as its primary goal."  *See Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56.  *See, e.g.*, *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011).  To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In a FOIA action, the agency may meet its burden by submitting "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks and citation omitted), and an index of the information withheld, *Vaughn*, 484 F.2d at 827–28; *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  An agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] section requirements." *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339,

352 (D.C. Cir. 1978)).  The Court reviews the agency's decision *de novo*, and the agency bears

the burden of sustaining its action.  5 U.S.C. § 552(a)(4)(B).

### III. DISCUSSION

**A.  The Department's Motion for Summary Judgment**

    1. *Adequacy of the Search*

Ewell first argues that the Department conducted an inadequate search in response to his

FOIA request.  An agency has an obligation under FOIA to conduct an adequate search for

responsive records.  "An agency fulfills its obligations . . . if it can demonstrate beyond material

doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-*

*Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of*

*State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  "In order to obtain summary judgment the agency

must show that it made a good faith effort to conduct a search for the requested records, using

methods which can be reasonably expected to produce the information requested."  *Oglesby v.*

*U.S. Department of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Although the agency "cannot limit

its search to only one record system if there are others that are likely to turn up the information

requested," it need not "search every record system."  *Id.*  The agency can show that it conducted

an adequate search by relying on "[a] reasonably detailed affidavit [or declaration], setting forth

the search terms and the type of search performed, and averring that all files likely to obtain

responsive records (if such records exist) were searched."  *Valencia-Lucena*, 180 F.3d at 326.

The Justice Department has introduced just such a declaration this case.  The declaration,

provided by trial attorney John Cunningham, explains that "[t]here were two sources of records

in [the Criminal Division] where documents responsive to Mr. Ewell's FOIA request were likely

to be located: (1) a[] . . . database used to track federal prosecutors' requests for permission to

apply" for Title III wiretaps and "(2) archived emails of [Criminal Division] employees that are

maintained by its IT department."  Dkt. 12-1 at 4 (Cunningham Decl. ¶ 11).  Cunningham states

that the Department searched both sources.  *Id.*  He explains that the Department searched the

Title III database for the telephone numbers submitted by Ewell and for Ewell's name.  *Id.* at 5–

6 (Cunningham Decl. ¶ 16).  And he attests that the Department identified the Criminal Division

attorney who reviewed the request for permission to apply for a wiretap and the Assistant U.S.

Attorney ("AUSA") who made the request, and searched the Criminal Division attorney's e-mail

account for all e-mails exchanged between them between December 30, 2011, and May 30,

2012.  *Id.* at 6 (Cunningham Decl. ¶ 19).  Cunningham explains: "[The Department] searched the

two records systems that would contain information responsive to Mr. Ewell's request.  Its

search was conducted in good faith, and was reasonable and complete."  *Id.* at 7 (Cunningham

Decl. ¶ 20).

       Ewell's primary argument is that the Department erred in not searching other databases

for information about him.  Specifically, he points to four cases from this Court in which Justice

Department components searched for records in databases that were not searched in his case.

*See Lewis v. U.S. Dep't of Justice*, 867 F. Supp. 2d 1 (D.D.C. 2011); *Petit-Frere v. U.S. Att'y's*

*Office for the S. Dist. of Fla.*, 800 F. Supp. 2d 276 (D.D.C. 2011); *Wolfson v. United States*, 672

F. Supp. 2d 20 (D.D.C. 2009); *Linn v. U.S. Dep't of Justice*, No. 92-cv-1406, 1995 WL 417810

(D.D.C. June 6, 1995).  But the FOIA requests submitted in each of those cases differed in

material respects from the one Ewell submitted.  In *Linn*, for example, the requester sought

"background information filed under his name and/or identifying number" from "eleven separate

governmental agencies or sub-agencies," including the Executive Office of U.S. Attorneys

("EOUSA") and the DEA.  1995 WL 417810, at *1.  The other cases are to similar effect:  In

*Wolfson*, the FOIA requester sought "information about himself" in eleven Criminal Division

databases. 672 F. Supp. 2d at 24. In *Petit-Frere*, the requester sought records regarding a

wiretap application, but he sent his FOIA request to the U.S. Attorney's Office in Miami, which

is why the search "began with the Legal Information Office Network System (LIONS)," the

database Ewell faults the Department for not searching in this case. 800 F. Supp. 2d at 277–79.

And in *Lewis*, the requester also sought information relating to a wiretap, but he sought it from

the U.S. Attorney's Office—which referred the request to the EOUSA— and the DEA, which is

why records systems used by those components were searched. 867 F. Supp. 2d at 7–11.

Ewell's FOIA/Privacy Act request, in contrast, was limited in two material ways. First,

Ewell's request was directed solely to the Criminal Division, Dkt. 12-2 at 2 (Cunningham Decl.,

Ex. A), not to EOUSA or the DEA. The distinction is a material one, as the Department's FOIA

regulations specify that a requester "should write directly to the FOIA office of the component

that maintains the records being sought." 28 C.F.R. § 16.3(a)(1) (emphasis added); *see also id.*

at § 16.1 (defining "component" to mean "each separate bureau, office, division, commission,

service, center, or administration"). As a result, only the component to which the FOIA request

is directed has an obligation to conduct a search. *See Hicks v. Executive Office of U.S. Attorneys*,

12 F. Supp. 3d 25, 29 (D.D.C. 2013). Second, unlike the requests in many of the cases on which

Ewell relies, Ewell's request did not seek all records regarding him, or even all records regarding

the investigation that led to his arrest. Instead, Ewell sought a precise set of documents—an

authentic OEO "copy of the Title III authorization letter(s), memorandums, and any other

documents involved in their approval for the electronic surveillance" conducted on five

telephone lines. *See* Dkt. 12-2 at 2 (Cunningham Decl., Ex. A). As Cunningham explains, OEO

is the component of the Criminal Division that processes requests from prosecutors seeking

permission to apply for court-authorized surveillance and that makes recommendations to the Assistant Attorney General for approval of those requests.  Dkt. 12-1 at 5 (Cunningham Decl. ¶¶ 13–15).  The Department thus reasonably construed Ewell's FOIA request to seek records actually involved in that approval process and, accordingly, reasonably concluded that its search effort should focus on records maintained by OEO and communications between OEO and the prosecutor who sought approval for the wiretaps.

Ewell also argues that the Department erred in refusing to conduct a broader search for responsive records under the Privacy Act.  He suggests that his invocation of the Privacy Act obligated the Department to search for "*all* files pertaining to [him] . . . in it[s] full system of records."  Dkt. 16 at 14 (emphasis added).  But the Privacy Act does not obligate an agency to conduct a search for *all* records relating to a requester where a requester has asked the agency only to look for certain records.  5 U.S.C. § 552a(d)(1); *see also Spears v. U.S. Dep't of Justice*, — F. Supp. 3d —, No. 14-387, 2015 WL 5730734, at *3 (D.D.C. Sept. 29, 2015).[1]  Here, as discussed above, Ewell's request was very specific—he sought documents involved in the OEO approval process, and those are the documents for which the Department searched.  Ewell "did not request" any other records "at the administrative level, and he will not be permitted to expand the scope of the request underlying this action and then assert an unexhausted claim." *Spears*, 2015 WL 5730734, at *3.  And, even if Ewell had requested all the records in all Criminal Division databases that refer to him, the Department would not have been required to provide access to any information in those systems of records that have been exempted from the Privacy Act's sweep, *see* 28 C.F.R. § 16.91, and Ewell does not identified any unexempted

---

[1]  *Spears*, a FOIA/Privacy Act action brought by an inmate housed in the same facility as Ewell, raises identical claims regarding a wiretap.  Judge Collyer granted summary judgment to the Justice Department in that action in September.  *See Spears*, 2015 WL 5730734, at *1.

system of records that he believes the Department should have searched, *see id.* §§ 16.70–16.136.

In sum, the declaration submitted by the Department makes clear that it "made a good faith effort to conduct a search for the requested records." *Oglesby*, 920 F.2d at 68.  Although Ewell may wish that the Department had searched more databases for records regarding the Title III wiretap or other, unspecified subjects, an agency need not "search every record system," *id.*, especially when it concludes that only certain systems are likely to have responsive records.  The search was adequate and reasonable.

2.  *Relevant FOIA Exemptions*

Although the Department initially relied solely on Exemption 3 to withhold all records responsive to Ewell's request, it now justifies its withholdings on the basis of Exemptions 3, 5, 6, and 7(C).[2]  Because all of the documents were properly withheld under either Exemption 3 or 5, the Court addresses only the assertion of those two exemptions here.

a.  Exemption 3

Exemption 3 shields from disclosure all records that are "specifically exempted from disclosure by statute," so long as the statute upon which the agency relies either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue"

---

[2] The agency bears the burden of identifying "the specific statutory exemption relied upon" in withholding records and must "demonstrate that the exemption applies to the documents in question."  *See Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 779 (D.C. Cir. 1978) (en banc). Although the Department did not assert Exemption 5 below, the D.C. Circuit has long implied that an agency may invoke a FOIA exemption for the first time before the district court—but not "for the first time in the appellate court."  *Id.*; *see also Maydak v. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000) (explaining that an agency "must assert all exemptions at the same time, in the original district court proceedings").  Ewell does not argue that the Department should be precluded from asserting Exemption 5 here, so the Court concludes that the exemption is properly before it.

or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A).[3]  "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents" and more on "the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978).  The Justice Department asserts that the non-disclosure provisions of Title III authorize it to withhold the application it submitted to the federal court in Pennsylvania for a wiretap, including all supporting materials.  *See* Dkt. 12-8 at 2 (Table of Responsive Records) (listing "Title III applications," "agent affidavits," "proposed Title III orders," and "authorization memorandums from the [Assistant Attorney General]" to attorneys approving the application for a wiretap as exempt under Exemption 3).[4]

Title III establishes a comprehensive scheme to govern the procurement, use, and disclosure of federal law enforcement wiretaps.  To obtain a wiretap, a law enforcement officer must submit an application "in writing upon oath or affirmation to a judge of competent jurisdiction."  18 U.S.C. § 2518(1).  The statute requires the application to include "the identity of the investigative or law enforcement officer making the application, and the officer

---

[3]  The exemption also provides that any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009," Pub L. No. 111-83, § 564, 123 Stat. 2142, 2184 (2009), must "specifically cite to" the exemption.  5 U.S.C. § 552(b)(3)(B).  Title III predates the Act.

[4]  Elsewhere in its briefing, the Department appears to assert Exemption 3 more broadly to cover documents *not* submitted to the court in connection with its Title III application.  *Compare* Dkt. 12-1 at 8–9 (Cunningham Decl. ¶ 24) (listing "[p]rosecutors' requests for permission to apply" for wiretaps and "[a]ction memorandums from [attorneys] to the [Assistant Attorney General]" as exempt under Exemption 3), *with* Dkt. 12-8 at 2 (Table of Responsive Records) (listing these items as exempt under Exemptions 5, 6, and 7(c), but not Exemption 3).  Because the Court concludes that these items are exempt under Exemption 5, it has no need to decide whether Exemption 3 would permit the government to withhold them—a potentially more difficult question given that Title III does not expressly provide for the protection of material not submitted to a court as part of a wiretap application.

authorizing the application" and a "complete statement of the facts and circumstances" giving rise to the application. *See id.* § 2518(1)(a)–(b).  If the judge concludes that the statutory requirements are met, he or she "may enter an ex parte order" authorizing the wiretap.  *Id.* § 2518(3).  Title III provides that any communications intercepted by the wiretap shall be recorded "if possible," and that the recordings "shall be made available to the judge issuing such order and sealed."  *Id.* § 2518(8)(a).  The recordings shall be used only by law enforcement officers "to the extent such use is appropriate to the proper performance of [their] official duties."  *Id.* § 2517.  Title III also provides that the "[a]pplications made and orders granted" for the authorization of wiretaps shall be sealed and "disclosed only upon a showing of good cause."  *Id.* § 2518(8)(b).  The recordings, the "court order" authorizing the wiretap, and the "accompanying application, under which the interception was authorized or approved," however, shall be produced to the parties before the recordings are introduced in a criminal proceeding.  *Id.* § 2518(9).

Not surprisingly, the D.C. Circuit has held that "intercepted communications" obtained pursuant to a Title III wiretap fall "squarely within the scope" of Exemption 3.  *Lam Lek Chong v. DEA*, 929 F.2d 729, 733 (D.C. Cir. 1991).  And several opinions of this Court have extended that holding to those materials submitted to a court in support of a request for authorization to conduct surveillance under Title III.  *See Sinito v. U.S. Dep't of Justice*, No. 87-814, 2000 WL 36691372, at *6 (D.D.C. July 12, 2000); *Butler v. U.S. Dep't of Justice*, No. 86-2255, 1994 WL 55621, at *8–9 (D.D.C. Feb. 3, 1994).  The Court agrees that Title III makes no distinction, at least for the purposes of Exemption 3, between the recordings and the application (including all supporting materials) that gave rise to them.  Both the recordings and the application are required by statute to be sealed except under specific circumstances.  *See* 18 U.S.C. §§ 2517, 2518(8)(a)–

(b), (9).  There is no reason that the recordings themselves should be understood as "particular types of matters to be withheld" under Title III but the application the Department submitted to obtain them should not be.  *See* 5 U.S.C. § 552(b)(3).  *Accord Spears*, 2015 WL 5730734, at *4 (noting that these items "remain under seal; thus, 18 U.S.C. § 2518(8)(b) prohibits their disclosure").

Ewell's primary argument is not that these materials fall outside of Exemption 3; instead, he argues that they fall within the exception established in *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999).  In *Cottone*, the government played recordings of telephone conversations it had obtained via a Title III wiretap "in open court, before the jury and the public gallery . . . and introduced them into evidence."  *Id.* at 552.  Cottone argued that Exemption 3 did not apply to the recordings because the government had introduced the tapes into the public domain.  *Id.* at 554.  The D.C. Circuit explained that the "public-domain" exception, on which Cottone relied, is a narrow one, and required Cottone to show "that there is a permanent public record of the *exact* portions [of the records] he wishes."  *Id.* (quoting *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992)).  Because Cottone had "demonstrated precisely which recorded conversations were played in open court," however, he met this demanding burden.  *Id.* at 555.  The court, accordingly, held that the government could not rely on Exemption 3 to shield the recordings from production.  *Id.* at 556.

Ewell argues that his case is like *Cottone* because "Title III intercepted content . . . w[as] disclosed, played, and entered into evidence" at his detention hearing.  Dkt. 16 at 26–27.  But his argument is unpersuasive for two reasons.  First, the transcript of Ewell's detention hearing does not show that any wiretapped conversations were played in open court.  At the hearing, a law enforcement officer acknowledged the existence of the wiretap and summarized several

conversations that he had recorded.  *See* Dkt. 12-9 at 16 ("Q. At that time were wiretap

interceptions occurring over phones used by . . . Eric Ewell?  A. Yes, they were."); *id.* at 20

(noting "conversations between Mr. Anderson and Mr. Ewell noting that they feared that Mr.

Anderson was kind of shook from being in jail and that they thought he would cooperate with

law enforcement").  It also appears from the transcript that the government introduced a "line

sheet" summarizing some of the calls intercepted between Ewell and other defendants.  *See id.* at

20–21 (describing "Exhibit 2"); *id.* at 34 (describing compilations of "informal, unofficial

summaries of or transcripts of phone calls").  But neither the agent's oral testimony nor the

written summaries would qualify under *Cottone* as sufficiently specific to waive Exemption 3

with respect to the recordings.

   More importantly, however, even if the government had played the recordings at Ewell's

detention hearing, that would not be sufficient under *Cottone* to waive Exemption 3 with respect

to the supporting documents that Ewell seeks.  The public-domain exception applies where a

FOIA requester can identify documents "made public through an official and documented

disclosure" that exactly "match the information previously disclosed."  *Wolf v. CIA*, 473 F.3d

370, 378 (D.C. Cir. 2007) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)).

Here, there is no claim that the authorization letters, memoranda, and related documents that

Ewell sought have themselves been publicly disclosed, only that the recordings have.  But even

if the *recordings* had been made public—which, as discussed above, Ewell has failed to show—

that would not justify the release of the *application materials*.  Ewell also notes that the

application materials were provided to his counsel under the terms of Title III's disclosure

provisions.  *See* 18 U.S.C. § 2518(9).  But the fact that those materials were provided to Ewell's

counsel in the course of discovery does not waive Exemption 3, as the D.C. Circuit held in

*Cottone. See* 193 F.3d at 556 ("[A] . . . compelled disclosure to a single party simply does not

enter the public domain.").  The government, accordingly, has not waived the protections of

Exemption 3 by publicly disclosing the application materials.

     b.  <u>Exemption 5</u>

     Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would

not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. §

552(b)(5).  This provision shields "those documents, and only those documents, normally

privileged in the civil discovery context."  *Sears, Roebuck*, 421 U.S. at 149.  As relevant here, it

permits an agency to withhold documents under the attorney work product privilege, which

protects documents and other memoranda prepared by an attorney in anticipation of litigation.

*See FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015); *Hickman v.

Taylor*, 329 U.S. 495, 510–11 (1947).  "If a document is fully protected as work product, then

segregability is not required" under FOIA.  *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 432

F.3d 366, 371 (D.C. Cir. 2005).  The Justice Department asserts that the following records are

exempt from disclosure under the work product privilege: "prosecutors' requests for permission

to apply for court authorization to intercept wire communications," "e-mail messages from [the

Electronic Surveillance Unit ("ESU")] to AUSA's acknowledging receipt of the AUSA's Title

III application," "OEO Title III Logging Notes," "e-mail messages between the ESU attorney

and the AUSA concerning the ESU review process, edits, revisions, etc.," "action memorandums

from the OEO to the AAG recommending approval of prosecutors' requests," and "letters signed

by Deputy AAGs on behalf of the AAG to a U.S. Attorney advising that the AAG has approved

the prosecutor's request to apply for a Title III order." Dkt. 12-8 at 2 (Table of Responsive Records).[5]

The government argues that these documents are exempt from disclosure under the attorney work product privilege because they were prepared in anticipation of Ewell's criminal prosecution. "When considering whether a document is prepared 'in anticipation of litigation,' this Court employs a 'because of' test, inquiring 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Boehringer Ingelheim*, 779 F.3d at 149 (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)). Cunningham attests that all of the withheld records were "prepared by an attorney . . . or someone acting at the direction of such an attorney . . . as part of the wiretap application process," and therefore were prepared "because of" of the government's case against Ewell. Dkt. 12-1 at 13 (Cunningham Decl. ¶ 32). Courts in this jurisdiction have consistently held that memoranda and e-mails sent between prosecutors in anticipation of prosecution are covered by the work product privilege. *See Gov't Accountability Project v. U.S. Dep't of Justice*, 852 F. Supp. 2d 14, 26–27 (D.D.C. 2012); *Wolfson*, 672 F. Supp. 2d at 30.

Ewell can muster no persuasive argument as to why the Department erred in asserting Exemption 5. He argues that the Department has failed to comply with its duty to segregate all responsive non-exempt material, but the Department has no duty to segregate factual material under the work product privilege. *See Judicial Watch*, 432 F.3d at 371. Moreover, because all

---

[5]  It is not clear from the Department's briefing and the record whether these letters were submitted to the court as part of the Department's application for a Title III wiretap. If they were, they would be exempt under Exemption 3, for the reasons described above, and there would be no need to consider whether they are also exempt under Exemption 5.

records not exempt under Exemption 3 are exempt under the work product privilege, the Court

has no need to consider the Department's assertion of the deliberative-process privilege, which

does require segregation.  Ewell similarly argues that several of the withheld documents (the

Title III affidavit and authorization memorandum) are not "predecisional" because they

accompanied the application presented to the court, but the question whether a document is

"predecisional" is relevant only to the assertion of the deliberative-process privilege, not the

work product privilege.  *See Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997).  Moreover,

to the extent that any of these records were filed with the authorizing court as part of the Title III

application, they are protected under Exemption 3, which does not turn on whether the sought-

after material is predecisional or, for that matter, whether it is deliberative.

　　　　In sum, the Justice Department appropriately withheld all responsive documents under

Exemptions 3 and 5.  Because the Court will grant summary judgment to the Department with

respect to Ewell's claims, Ewell's request that the Court "provide for expeditious proceeding in

this action" is denied as moot.  Dkt. 1 at 7 (Compl.).

## B.  Ewell's Motion for Leave to Amend

　　　　Ewell has also moved for leave to file an amended complaint.  Dkt. 25.[6]  His proposed

amended complaint would add three additional counts regarding alleged illegalities in the

Department's use of a wiretap to intercept his communications.  *See* Dkt. 25 at 24–35.

Specifically, construed liberally, the proposed amended complaint appears to allege claims under

---

[6]  Ewell also moved for an extension of time to in which to file his motion for leave to file an
amended complaint.  Dkt. 24.  That motion is hereby **GRANTED** *nunc pro tunc*, and Ewell's
motion for leave to file an amended complaint is deemed timely filed.  The Department also
moved for an extension of time in which to file its opposition to Ewell's motion for leave to
amend his complaint.  Dkt. 26.  That motion is also hereby **GRANTED** *nunc pro tunc*, and the
Department's opposition is deemed timely filed.

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388; the Federal Tort Claims Act ("FTCA"), 28

U.S.C. § 1346; the remedial provisions of Title III, 18 U.S.C. § 2520; and a civil-rights statute,

42 U.S.C. § 1985(3).  It would also add over 20 new defendants, including the U.S. Attorney for

the Western District of Pennsylvania, the regional director of the DEA in Pittsburgh, and dozens

of their employees.  The motion appears to be modeled on a motion filed in *Spears v. U.S.*

*Department of Justice*, — F. Supp. 3d —, No. 14-387, 2015 WL 5730734 (D.D.C. Sept. 29,

2015).  *Compare* Dkt. 25 at 26 n.7 (describing the "210[-]page Sprung Affidavit," which does

not appear in the record in this case), *with Spears*, 2015 WL 5730734, at *1 (describing the

declaration of Peter Sprung, submitted by the Justice Department in that case).

      Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading shall be

"freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a).  But leave may be denied in

cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, [or] futility of amendment."  *See Atchinson v. District of*

*Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182

(1962)).  "Courts generally consider the relation of the proposed amended complaint to the

original complaint, favoring proposed complaints that do not 'radically alter the scope and nature

of the case.'"  *Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 58 (D.D.C. 2009) (quoting *Miss. Ass'n of*

*Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991)).  The Department argues

that Ewell's motion should be denied for the same reason that the motion in *Spears* was denied—

that is, because the proposed claims "would substantially alter the scope and nature of this FOIA

action," would "unduly delay these proceedings," and would be futile.  *See* Dkt. 27-1 at 2.

The Court agrees on all three counts.  The proposed amended complaint would dramatically alter the scope and nature of this action.  Unlike the current suit, a suit under *Bivens*, the remedial provisions of Title III, Section 1985, or the FTCA would proceed against individual officers or the United States on the basis of alleged constitutional, statutory, or common-law tort violations allegedly committed by those officers.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Simpkins v. District of Columbia*, 108 F.3d 366, 369 (D.C. Cir. 2007).  The new claims have nothing to do with whether the Department has complied with its obligations under FOIA and the Privacy Act, but rather attack the Department's investigation of Ewell's allegedly criminal activity.  Expanding a FOIA/Privacy Act suit to include allegations of illegal wiretapping would entail significant additional burdens on the defendants, and it would unduly delay the resolution of the current proceedings.  The proposed amendments, moreover, are futile, at least in significant part.  This Court, for example, does not appear to have venue over Ewell's FTCA claims against the United States, because Ewell does not reside in this district and it does not appear that his claims are premised on any act or omission occurring here.  *See* 28 U.S.C. § 1402(b) (permitting FTCA actions only "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred").  Even if venue were proper in this district over some of Ewell's proposed new claims, moreover, those claims focus on misconduct allegedly occurring in the Western District of Pennsylvania, and there is no evident rationale for litigating them here, rather than where the witnesses and evidence are presumably located.  *See id.* § 1404(a).  In addition, Ewell does not allege that he has exhausted his administrative remedies, as the FTCA requires.  *Id.* § 2675(a).

In sum, Ewell's proposed amended complaint would radically alter the scope and nature of this action; it would result in an undue delay of the proceedings; and, at least in significant

respects, it would be futile.  For these reasons, the Court **DENIES** Ewell's motion for leave to amend his complaint.

## CONCLUSION

For the foregoing reasons, the Justice Department's motion for summary judgment is **GRANTED**.  Ewell's motion for an extension of time in which to move for leave to amend his complaint is **GRANTED** *nunc pro tunc*, and the motion is deemed timely filed.  The Justice Department's motion for an extension of time in which to file its opposition to Ewell's motion is also hereby **GRANTED** *nunc pro tunc*, and the Department's opposition is deemed timely filed. Ewell's motion for leave to amend his complaint is **DENIED**.

**SO ORDERED.**  The Clerk shall enter judgment, and shall mail a copy of this Memorandum Opinion and Order to the plaintiff at the address reflected on the docket.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  January 26, 2016